In accordance with these views, the writ of certiorari in this case should be quashed, with costs to the respondents.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, April 1, 1873. *Mullin, Talcott* and *E. D. Smith*, Justices.]

———— • • • ————

•

MOREY *vs.* WEBB and others.

Although an agent employed to purchase property is authorized, by his principals to purchase for cash, only, and is furnished with sufficient funds for that purpose; yet if he purchases property for his principals, and transmits it to them, leaving a part of the price unpaid, and appropriates such funds to his own use, the vendor may recover of the principals the balance of purchase money unpaid; where it appears that the vendor did not give credit to the agent, nor was any credit stipulated for, contemplated or given, in express terms, at any time, or intended to be given, to the principals, yet that, by the usual course of dealings between them, for a considerable period, the vendor had been in the habit, when the several parcels of a lot were large and heavy, and could not all be conveniently delivered at the same time of delivering cheese purchased of him by such agent, at the railroad depot,

Morey *v.* Webb.

marked and consigned to the principals, before the price was, or could be conveniently ascertained, and before payment was actually made, and that the principals were aware of, and acquiesced in, that course of dealing. Under such circumstances, if the jury are satisfied that the purchasers knew that cheese was thus delivered before actual payment of the price, and acquiesced in that course of business, they will be warranted in finding that, to that extent at least, the agent had implied authority to purchase on credit, for the account of his principals. And if they find that upon a purchase of cheese by such agent, for his principals, the vendor, in accordance with the course of business and dealing long practised, and known and recognized by the principals, parted with the possession of the property upon the faith and credit that the principals would pay for it, through such agent, immediately, or within a day or two thereafter, this will justify a verdict in favor of the vendor, against the principals, for the unpaid purchase money.

THIS is an appeal from a judgment rendered upon a verdict at the circuit.

The action was brought to recover for a quantity of cheese, sold to the defendants through the agency of one Chapman. The proofs showed that the defendants, being merchants, residing and doing business in the city of New York, employed said Chapman, who resided at Utica, to purchase at Herkimer and its vicinity, and send to them, cheese, in the years 1868, 1869 and 1870, and that he in those years purchased for them, of different persons, and sent to them, by railroad, large quantities of cheese. Chapman was employed to select and purchase the cheese, was furnished with funds to pay for the same, or credit on some of the banks at Utica, whereby he could pay for such cheese on delivery. He had no express authority to purchase upon credit, and was not expected to do so, but was instructed to pay cash upon all purchases, which was to be furnished upon his advice of the amount needed, at all times, if he was not at the time in funds. This course of business continued till in the summer of 1870, when he made purchase of three lots of cheese from the plaintiff, on the 27th of June and the 9th and 16th of August, respectively; upon which, part of the purchase money was unpaid, and for which this action was brought.

The cause was tried at the Herkimer circuit, in December, 1871, when the plaintiff recovered a verdict of $4,121.67, upon which a judgment was duly entered up. From that judgment the defendant appealed.

*Earl & Smith*, for the appellants.

*F. Kernan*, for the respondent.

*By the Court,* E. DARWIN SMITH, J. The practical question involved in the decision of this case is, which of two innocent parties shall suffer for the wrong or default of a third person. The plaintiff sold his cheese to the defendant through the agency of Chapman, and has not received payment therefor. The defendants furnished their agent, Chapman, with the funds to make such payment, which he misapplied to his own use, or misappropriated.

The case, upon a large mass of testimony and documentary evidence, was submitted to the jury, and their verdict for the plaintiff affirms the principles of the charge of the circuit judge; exceptions to which, present the only points made for our consideration.

It is quite clear, I think, from the evidence in the case, that Chapman was the agent of the defendants for the purchase of cheese, at Herkimer, acting under limited and circumscribed powers. He was to make the contract of purchase when directed to do so by the defendants, exercising his judgment in respect to the quality of the cheese, which he was to inspect. He was to apprise the defendants of the purchase, when made, was to see to the shipping and invoice of the cheese at the railroad depot, and pay for the same with the funds furnished him for that purpose. He had no authority to purchase cheese upon credit. The transactions between the parties, in respect to the large quantity of cheese sold to the defendants through Chapman's agency, in

Morey *v.* Webb.

the years 1868, 1869 and 1870, were all, on both sides, considered and intended to be sales and purchases for cash. No credit was stipulated for, contemplated, or given in express terms, at any time, or intended to be given. The course of the business and dealings, in respect to the cheese, seems to have been that the cheese was examined and purchased by Chapman at the cheese factory of the plaintiff at Newport, a distance of twelve miles, or so, from Herkimer. It was weighed at the factory, and marked there, by the plaintiffs' agents, with the name of the defendants' firm imprinted on the boxes, with a brand furnished the plaintiff for that purpose, by Chapman. The boxes were then by the plaintiff transported to and delivered at the railroad depot of the New York Central railroad at Herkimer, where they were invoiced, consigned and shipped to the defendants in New York, and paid for by Chapman. This was the general course of business, and this was the course in respect to the three lots of cheese in controversy in this suit. While there was thus no stipulation for credit in any case, yet as the parcels of cheese were more or less large and heavy, and might not all be delivered at the depot at the same time, and the price, in many cases, was not fixed at the factory, but was to be fixed by reference to sales made at Little Falls on the previous Monday, and as some little delay was unavoidably incident to the transporting, handling, receiving and shipping the several lots of cheese, and such cheese might be, and in many cases actually was shipped to the defendants before the price was or could be conveniently ascertained or paid—although Chapman was, or immediately upon notice of this purchase would be, placed, by the defendants, generally, in funds to make such payment promptly upon delivery of the cheese—the question arises, and it is really all the question in the case, at whose risk was this delay in making

payment, and who was responsible for the fidelity of Chapman in making such payment.

The case was put to the jury upon the proposition that to this extent an authority to purchase on credit— that is, credit and trust that payment would be made according to custom and usage, in respect to sales for cash of heavy articles, might be implied. The learned judge, at the circuit, charged as follows: "If you come to the conclusion, upon the evidence, that it was an ordinary and usual course of dealing for the plaintiff to deliver his cheese, the cheese selected by Chapman as the agent of the defendants, at the railroad depot marked and consigned to them; if you are satisfied, also, that the defendants knew that the cheese was thus delivered before payment was actually made, and acquiesced in that course of business; then you will be warranted in finding that to that extent at least, Chapman had an implied authority to purchase on credit for the account of the defendants, because manifestly for the interval of time that elapsed after the plaintiff thus parted with the possession of his property, and before he was actually put in funds, he rested upon the faith and credit that the principals of Chapman would pay him for the property, and so the defendants themselves understood it, provided they were aware of this course of business and acquiesced in it."

This proposition embraces the point upon which the case was submitted to the jury. It was enlarged, illustrated and amplified, but in substance it states the ground upon which the jury were advised that a verdict might be found for the plaintiff, and the only ground upon which such a verdict could be found and sustained.

The circuit judge expressly instructed the jury that if the plaintiff gave credit to Chapman for the cheese, he could not recover.

The jury have, in effect, found that the plaintiff delivered the cheese in question at the Central railroad

depot upon a contract of purchase made by Chapman for the defendants; that said cheese was so delivered, consigned to the defendants in accordance with the course of business and dealing in respect to the sale and delivery of cheese, long practised, known and recognized by the defendants, and that he parted with the possession of it upon the faith and credit that the defendants would pay for it, and in expectation that they would be immediately paid, that is, within a day or so thereafter, by Chapman as agent for the defendants, according to the course and practice theretofore pursued. I do not see why, upon the whole case, the same was not fairly presented to the jury, and upon correct principles, and do not think any substantial error was committed by the judge in his charge to the jury.

The judgment should therefore be affirmed.

Judgment affirmed.

[Fourth Department, General Term, at Rochester, April 1, 1873. *Mullin, Talcott* and *E. D. Smith*, Justices.]